### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

WELLS ENTERPRISES, INC.,

      Plaintiff,

v.

OLYMPIC ICE CREAM, d/b/a
MARINO ITALIAN ICES,

      Defendant.

**No. 11-CV-4109-DEO**

**Memorandum and Opinion Order**

_____

## I.  INTRODUCTION

On December 16, 2011, Wells Enterprises, Inc. (hereinafter "Wells") filed a complaint against Olympic Ice Cream.  Olympic Ice Cream does business as Marino Italian Ices (hereinafter "Marino").  Wells alleges Marino has violated the Lanham Act (the U.S. Trademark Act), as well as engaged in common law trademark infringement and unfair competition.  Docket No. 2.  Currently before this Court is Marino's motion to dismiss for lack of personal jurisdiction and improper venue.  Docket No. 7.  In the alternative, Marino requests the case be transferred pursuant to 28 U.S.C. § 1404.  Id.

## II.  FACTS

The parties are in general agreement as to the relevant facts.  Wells is a corporation organized under Iowa law with its principal place of business in Iowa.  Docket No. 2, 2.

Marino is a New York corporation with its principal place of business in New York.  Docket No. 2.  While Wells sells its products in New York, Marino does not and has never sold its products in Iowa.

On August 18, 2004, Wells purchased two New York corporations, Fruit-Ices Corp. (hereinafter "Fruit-Ice")and Chill Ices, Ltd. (hereinafter "Chill Ice"), from Michael Barone, Frank Barone, and David Edelstein.  Docket No. 2, 3; see also Docket No. 9-2, 4.  The Purchase Agreement provided Wells "'right, title and interest' in and to various trademarks, including" a trademark to a product called FROZFRUIT.[1]  Docket No. 2, 3.  "The Sellers also sold to Wells all proprietary formulas, trade secrets, private labels, logos, proprietary information and know-how related to" the businesses purchased.  Docket No. 3, 2.

On January 1, 2005, Wells entered into a two year distributorship agreement with Marina Ice Cream Corporation (hereinafter "Marina").  Docket No. 2, 5.  The agreement was signed by Michael Barone as the Vice President and on behalf of Marina.  Docket No. 9-1, 2.  In addition, Frank Barone acts

---

[1] FROZFRUIT is registered under United States Trademark Registration No. 1,331,109.

2

as Marina's President and Human Resources Manager.  Docket No. 9-3, 1.  The agreement provided that Marina would distribute Wells' products, including FROZFRUIT.  Docket No. 2, 6.  The agreement also provided that Marina acknowledged that Wells owned "'all right, title and interest in and to the Wells' Trademarks, know-how and all other proprietary information . . .'" and, upon termination of the agreement, Marina would discontinue use of "'Wells' Trademarks and Wells' Property . . . .'"  Docket No. 2, 6 (quoting Docket No. 2-4).  On January 1, 2008, Wells and Marina entered into another distributorship agreement which again stated that Wells maintained ownership of its Trademarks.  Docket No. 2, 6-7; <u>see</u> <u>also</u> Docket No. 2-6.  The second agreement also provided that any goodwill created by Marina's distribution "'shall be deemed to have been made by and inure to the benefit of Wells,'" and, upon the "termination or expiration" of the agreement, Marina "shall immediately discontinue the use of the Wells' Trademarks and the Wells' Property . . . .'"  Docket No. 2, 7.

Shortly after the expiration of the Marina distributorship agreement, the Defendant, Marino, began selling a FROZENFRUIT bar, which Wells alleges has "nearly identical trade dress to that of Wells' FROZFRUIT bar."

3

Docket No. 2, 7.  The FROZ portion of Wells' FROZFRUIT packaging is written in blue lettering, and the FRUIT portion of FROZFRUIT is written in rainbow lettering.  The FROZEN portion of Marino's FROZENFRUIT packaging is also written in blue lettering, and the FRUIT portion of FROZENFRUIT is also written in rainbow lettering.  Both the FROZFRUIT and FROZENFRUIT packages also contain depictions of the fruit within the bar across the bottom of the package, as well as the Marino and Wells logos in the upper left hand corners respectively.

Marino, though a separate corporate entity, uses the address formerly utilized by Chill Ice and Fruit Ice, which, as previously noted, formerly made FROZFRUIT and was sold to Wells by Michael Barone, Frank Barone, and David Edelstein. Docket No. 9-3, 2.  Frank Barone is the Director and Michael Barone the President, CEO, Chief Technology Officer, and Information Technology Manager of Marino.  In addition, Marinos's largest distributor of its products is Marina, which, as previously noted, also acted as the distributor of Wells' FROZFRUIT bar and other products from 2005 through 2010.

## III.  PERSONAL JURISDICTION

An action may be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  The party asserting jurisdiction has the burden to make a *prima facia* showing that jurisdiction is proper. Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co., KG, 646 F.3d 589 (8th Cir. 2011).  A court considering whether jurisdiction is proper must view the evidence then available in a light most favorable to the party asserting jurisdiction and resolve all factual conflicts in favor of that party. Gross Graphic Systems, Inc. v. Man Roland Druckmaschinen Aktiengesellschaft, 139 F. Supp. 2d 1040 (N.D. Iowa 2001) (citing Dakota Industries v. Dakota Sportswear, Inc., 946 F. 2d 1384, 1387 (8th Cir. 1991).

In order for a federal court to exercise jurisdiction, the forum state's long-arm statute must provide sufficient grounds.  See Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).  If jurisdiction is proper under the forum state's long-arm statute, the exercise of jurisdiction must still comport with a defendant's constitutional Due Process Rights. Id.

Iowa Rule of Civil Procedure 1.306 provides for personal jurisdiction over a defendant to the full extent of the Constitution. <u>Med-Tec, Inc. v. Kostich</u>, 980 F. Supp. 1315 (N.D. of Iowa 1997). Thus, the question here presented is whether forcing Marino to defend itself in a federal court located in the State of Iowa would violate its constitutional Due Process Rights.

Due Process requires that a defendant "have certain minimum contacts with" a forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). Minimum contacts are contacts, ties or relations with a forum state such that a defendant "should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 299 (1980). Traditional notions of fair play and substantial justice refer to the reasonableness of requiring a defendant "to defend a particular suit" in the forum in which it is brought. <u>Id.</u> at 292 (citing 326 U.S. at 292). A determination of whether the exercise of jurisdiction is ultimately reasonable requires a court to consider the

defendant's burden of defending in the forum state, as well as:

> the forum State's interest in adjudicating the dispute . . . the plaintiff's interest in obtaining convenient and effective relief . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies . . . .

Id. (internal citations omitted).

In interpreting and synthesizing Supreme Court case law, the Eighth Circuit has identified five factors to be considered when determining whether an exercise of jurisdiction comports with constitutional Due Process:

> (1) the nature and quality of the [defendant's] contacts with the forum state; (2) the quantity of the [defendant's] contacts with the forum state; (3) the relation of the cause of action to the [defendant's] contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dakota Industries, Inc. v. Dakota Sportwear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991) (citing Land-O-Nod Co. v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir. 1983)).

The first three factors are the predominant "factors, and the remaining two factors are secondary . . . ." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

7

A court must look at all of the factors together and "examine the totality of the circumstances in making a personal-jurisdiction determination." Id.

The Supreme Court has recognized the existence of two types of jurisdiction:  specific and general. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  Specific jurisdiction refers to the exercise of "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, fn. 8.  General jurisdiction occurs when, though the suit may not arise out of a defendant's contacts with the forum, the defendant's independent contacts with the forum are so "continuous and systematic" that the exercise of jurisdiction remains justified.  Id. at 415 (citations omitted).  Thus, the distinction between specific and general jurisdiction is a recognition that fairness requires more or less contacts with a forum depending on whether the conduct of the defendant at issue is part of the purported basis for jurisdiction.

In Burger King Corp. v. Rudzewicz, the Supreme Court recognized that the exercise of specific jurisdiction is proper when

8

> an out-of-state defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.

471 U.S. 462, 473-74 (1985) (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984) and <u>Helicopteros Nacionales de Colombia</u>, 466 U.S. at 414).

Similarly, in <u>Calder v. Jones</u>, the Supreme Court ruled that jurisdiction was proper so long as the defendant engaged in "intentional conduct . . . calculated to cause injury" in the forum State.[2]   465 U.S. 783, 791 (1984).

In trademark infringement or unfair competition cases in which the defendant resides and sells its product in a state other than the state in which an action is brought, it may be difficult for a plaintiff to demonstrate that the conduct of the defendant was "purposefully directed" at a resident of the state in question, as required under <u>Rudzewicz</u>, or intentionally calculated to cause injury in the state in question, as required under <u>Calder</u>.   This may be true even though the plaintiff, whose proprietary interests in its products' designs were allegedly wrongfully usurped, resides

---

[2] The Eighth Circuit, rather than viewing <u>Calder</u> as announcing independent grounds for a finding of personal jurisdiction, has stated that it merely "requires the consideration of additional factors . . . ."   <u>Dakota Industries, Inc.</u>, 946 F.2d at 1391.

9

in the state where the action was brought.  For instance, the defendant may not have, due to a lack of sophistication, intentionally engaged in trademark infringement or unfair competition.   Further, a defendant may have simply been unaware of a plaintiff's legal residence and, therefore, unaware of where any injury would result.   Given that many trademarks appear on web-sites on the world-web and originate from unknown or difficult to discern locations, this is undoubtedly a legitimate concern.   As previously noted, the touchstone of whether or not the exercise of jurisdiction is proper is whether or not the defendant could reasonably expect to be haled into a distant court.

However, after thoroughly reviewing Supreme Court case law and the Eighth Circuit's five-part test, this Court is persuaded that, under the totality of the circumstances presented in this case, this Court has the authority to exercise specific jurisdiction over Defendant.

As previously noted, Michael and Frank Barone, who together act as Defendant Marino's Director, President, CEO, Chief Technology Officer, and Information Technology Manager, have intimate knowledge of Wells' operations related to FROZFRUIT; after all, they are, along with David Edelstein,

10

who initially sold the rights related to FROZFRUIT to Wells. Even further, they, as President, Vice President and Human Resource Manager of Marina, were directly involved in the distribution of FROZFRUIT on Wells' behalf and were aware that Wells contractually defended their proprietary interest in FROZFRUIT.

Defendant argues that because Fruit Ice, Chill Ice, and Marina are not named Defendants, their contacts with this forum are irrelevant. While Defendant is correct in noting that, absent an alter-ego theory, the contacts of its officers, while acting on behalf of separate entities (i.e. Marina, Fruit-Ice, and Chill-Ice), are not its contacts, they are wrong to conclude that these contacts are not independently significant facts. The knowledge of Michael and Frank Barone, who run Defendant Marino's day-to-day operations, are, both literally and legally speaking, inseparable from Marino's knowledge.[3]   The imputation of knowledge from agent to principal is justified because a "principal's agents link the principal to the external world

---

[3] The Restatement (Third) of Agency § 5.03 provides that "notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal . . . ."

11

for purposes of taking action . . . ." Restatement (Third) of Agency § 5.03, ct. b. This reasoning is particularly persuasive when the principal is a corporation – a legal fiction, literally incapable of having any knowledge outside of the knowledge of its agents. Furthermore, the more authority an agent has within the structure of a principal, the more reasonable it is to hold the principal accountable for the agent's knowledge. As previously noted, the evidence before this Court indicates Michael and Frank Barone are the primary owners and operators of Marino. Thus, prior to developing FROZENFRUIT, Marino had detailed knowledge of Wells' proprietary interest in FROZFRUIT, including its Trademark. Furthermore, Marino, in adopting a trade dress for FROZENFRUIT which it knew to be similar to FROZFRUIT, was aware that its actions could result in injury within the State of Iowa. To hold otherwise would elevate a necessary legal fiction – corporate personhood – into a legal absurdity.

This Court is persuaded that the facts of this case are on point with the facts in Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384 (8th Cir. 1991). In Dakota Industries, the Eighth Circuit held that "the use of [a] trademark with knowledge of infringement" resulted in an

"intentional tortious wrongdoing," which falls within the purview of the Supreme Court's decision in <u>Calder</u>.[4]  946 F.2d at 1391.   This Court is also persuaded that the test in <u>Rudzewicz</u> is satisfied.   Defendant, prior to adopting its trademark, had, through its agents, detailed knowledge of Plaintiff's proprietary interest in FROZFRUIT.  Defendant also had, through its agents, direct knowledge of Plaintiff's legal residence.   Thus, Defendant's adoption of a trademark similar to Plaintiff's clearly constituted an act purposefully directed at this forum.

_____

[4] At the hearing of February 15, 2012, Defendant contended that the <u>Dakota Industries</u>' Court largely relied on the fact that some of defendant's products were sold in the forum state.  After thorough review of <u>Dakota Industries</u>, this Court is not persuaded this was a predominant factor.  The record in <u>Dakota Industries</u> is clear:  the defendant there did not ship the products in question directly to the forum State; instead, the products were only later distributed to the forum State by a third party.

Furthermore, as discussed in detail in this section, Defendant's agents, acting as agents of other entities, contractually bound those other entities not to interfere with the Plaintiff's proprietary interest here at issue; this indicates Defendant's actions, as conducted through its agents, were particularly purposeful, intentional, and directed at Plaintiff, whom Defendant well knew to reside in this forum.   After considering the factors in <u>Dakota Industries</u> and the factors present here, this Court is persuaded the exercise of personal jurisdiction, though justified in <u>Dakota Industries</u>, is far more justified in this case.

Furthermore, this Court has a real interest in providing entities registered and headquartered within Iowa a forum in which to file complaints against those who allegedly commit intentional torts against them; especially when those torts relate to property whose ownership primarily rests within, though it may also extend outside, Iowa.   Though Marino maintains that its witnesses live in New York, and it is overly burdensome to require them to defend themselves in Iowa, this is, in accordance with Eighth Circuit case law, a secondary consideration.   See Arden, 614 F.3d at 794. Furthermore, though Wells has offices in New York, it is undisputed that the hub of their operations is within this forum, and there is no indication Wells' offices in New York are equipped to or have the requisite information to maintain this cause of action.   Since Wells' principal operations are in Iowa, it would be nearly, if not equally, as burdensome to require them to pursue their claims in New York.   See Docket No. 7-1, 1 and Docket No. 9, 13-14.

In summation, because Defendant had detailed knowledge of Plaintiff's proprietary interest in FROZFRUIT, as well as Plaintiff's status as an Iowa corporation headquartered in Iowa, their conduct was purposefully directed at and

14

intentionally calculated to cause injury to Plaintiff within this district.  As such, Defendant had adequate notice that its conduct would make it susceptible to being haled into court in the State of Iowa.  Furthermore, because Plaintiff's interest in obtaining a convenient forum and this Court's interest in adjudicating causes of actions against residents of this jurisdiction overrides the Defendant's interest in convenience, the exercise of jurisdiction complies with traditional notions of fair play and substantial justice. **Therefore Defendant's motion to dismiss for lack of personal jurisdiction is denied**.

## IV.  VENUE

As previously noted, Defendant requests dismissal based on improper venue.  28 U.S.C. § 1391(b)(1) provides that "[a] civil action may be brought in a judicial district in which any defendant resides."  Though, in terms of subject matter jurisdiction, Defendant is considered a resident of New York, 28 U.S.C. § 1391(c)(2), relating to venue, provides that

> an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."

Thus, because Defendant is subject to this Court's personal jurisdiction, Defendant is, for purposes of venue, a resident of this district, and venue is proper. **Therefore, Defendant's motion to dismiss based on improper venue is denied**.

## V.   TRANSFER OF VENUE

Defendant also requests transfer of venue pursuant to 28 U.S.C. § 1404(a), which provides:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . .

The primary purpose of § 1404(a) is to provide a district court discretion to transfer venue for reasons of convenience and fairness, "despite the propriety of the plaintiff's venue selection." Van Dusen v. Barrack, 376 U.S. 612, 634 (1964). The Eighth Circuit has recognized that "considerable deference" is given "to a plaintiff's choice of forum," and, therefore, the "party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010).

A court should consider "the convenience of the parties, the convenience of witnesses, [and] the interests of justice," as well as any other relevant factors.  <u>Terra Intern., Inc. v. Mississippi Chemical Corp.</u>, 119 F.3d 688, 696 (8th Cir. 1997). Under the general category of "Convenience," a court should consider . . .

> (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the application of each forum state's substantive law.

<u>Id.</u> at 696.

Under the general category "Interest of Justice," a court should consider:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

<u>Id.</u>

Defendant's Brief focuses on the following factors:  (1) the lack of a forum selection clause; (2) the Defendant's

17

location, (3) the location of potential witnesses, and (4) the location of operative events and records.

Because there is no contractual relationship between Plaintiff and Defendant, there is, of course, no applicable forum selection clause.   While the presence of a forum selection clause may be significant, its absence generally does not militate toward a transfer.   In all tort actions between parties not contractually bound to each other, there will be no forum selection clause, and so it is difficult to comprehend how the absence of a forum selection clause could overcome the "strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).

As to the Defendant's location, it is true that Defendant is a New York corporation with its principal place of business in New York.   However, Plaintiff is an Iowa corporation with its principal place of business in Iowa.   Though Plaintiff has an office in New York, there is no indication its New York office has the means or possesses the requisite information to pursue this cause of action.   As previously noted, Defendant bears the burden of showing this Court why a transfer is appropriate. In re Apple Inc., 602 F.3d at 913.   Furthermore,

absent evidence to the contrary, when a Plaintiff chooses their home forum, "it is reasonable to assume" they did so because it was "convenient." Piper Aircraft Co., 454 U.S. at 255-56. On balance, it appears forcing Plaintiff to pursue its cause of action in the Eastern District of New York would be nearly, if not equally, as burdensome as forcing Defendant to defend in this district. In any event, "the mere fact that the costs of litigation would be more burdensome on Defendants than on Plaintiff should the case remain in Iowa is not alone sufficient cause to grant a transfer." Medicap Pharmacies, Inc. v. Faidley, 416 F. Supp. 2d 678, 687 (S.D. Iowa 2006).

The Defendant's Brief further contends that "most of the non party witnesses are . . . located in the Eastern District of New York," and Plaintiff's "have not and cannot allege that any potential witnesses reside in this District." Docket No. 7-1, 12. Defendant's Brief also notes that "Rule 45 of the Federal Rules of Civil Procedure limits the subpoena power to compel the attendance of non-party witnesses to within 100 miles from where that person resides, is employed, or regularly transacts business . . . ." Docket No. 7-1, 13 (citing Fed. R. Civ. P. 45(c)(3).

19

While the "convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed" in a transfer of venue analysis, "'the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.'" Medicap Pharmacies, 416 F. Supp. 2d at 687 (quoting Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1402 (D. Minn. 1991)).   Neither Defendant's initial Brief nor their Reply identify the non-party witnesses which are located in the State of New York or would be beyond this Court's subpoena power.   In the closing minutes of the hearing on February 15, 2012, post-briefing, Defendant's counsel identified Wells' current distributor in New York as a potential witness but failed to indicate what they would testify to.[5]

Finally, Defendant contends that the "location of operative events[,] including the location of the relevant evidence[,] also militates in favor of transfer."   It appears

---

[5] In a supplement to their resistence, Plaintiff indicates that Defendant, though they have attempted to identify the substance of Wells' New York distributor's testimony in an e-mail to Plaintiff, have not shown that the testimony is essential or even relevant to this litigation.   Docket No. 13, 5.   After reviewing the relevant e-mail, this Court agrees. Docket No. 13-1.

the evidence in this case will predominantly consist of business records. In this modern world of computers, scanners, fax machines, and overnight delivery, the location of the evidence in a case such as this is a slight, if not irrelevant, factor. See Medicap Pharmacies, Inc., 416 F. Supp. 2d at 688. Furthermore, it is likely many of the Plaintiff's records related to its proprietary interests are kept at its headquarters in Iowa, and, therefore, a transfer of venue would only succeed in shifting the burden of transporting documents to Plaintiff.

As to the location of the operative events, it is important to note that trademark infringement is not the type of tort that involves a discrete situs of tortious action, such as a negligent car accident or assault. Trademarks are intellectual, rather than physical, property, and, as such, may be infringed upon from the other side of the planet. When due process requirements are satisfied, it would be unreasonable to force a Plaintiff to bring a cause of action where the alleged infringer resides solely because that is where the alleged infringer's actions occurred. Assuming it even makes sense to say there is a location of operative events in a trademark infringement case, that location -

again, as long due process standards are satisfied – should be where the rightful owner of the trademark resides, for it is, in a sense, from this location where the trademark was usurped.

Overall, Defendant has failed to meet its burden of showing that Plaintiff's choice of venue is unwarranted. **Therefore, Defendant's motion to transfer venue is denied.**

**IT IS SO ORDERED** this 29th day of June, 2012.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa